## La Salle County Carbon Coal Co. v. Matthew Offergeld.

1. INSTRUCTIONS—*As to Assuming Risks of Incompetency of Fellow-Servant.*—An instruction which tells the jury that if they find from the evidence that the fellow-servant was incompetent, that plaintiff knew of such incompetency and notified the top boss of that fact, that the top boss did not remove the incompetent party, but permitted him to continue in the line of his employment after such notice, that plaintiff continued to work with him, and afterward received the injury complained of by reason of the incompetency of the fellow-servant, then the plaintiff could not recover in this action, is properly refused, because it omits the essential fact claimed by the plaintiff, that the top boss, when complaint was made of the fellow-servant, ordered plaintiff to go to his work, assuring him that it was all right, and because it makes the entire case turn on the question of the competency of the fellow-servant, whereas one count of the declaration charged defendant with negligence in other respects.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge presiding. Heard in this court at the April term, 1902. Reversed and remanded. Opinion filed October 14, 1902.

WALTER A. PANNECK and DUNCAN & DOYLE, attorneys for appellant.

LEE O'NEIL BROWNE and BREWER & STRAWN, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellant owns and operates coal mines, one of which, known as the Rockwell shaft, is situated in the eastern portion of the city of La Salle, on the main line of the Chicago, Rock Island & Pacific Railway Company. On the north side of the railroad, which at this place runs nearly east and west, are three switch tracks for the use of the Rockwell shaft, running nearly parallel with the main tracks. These tracks take their names from the size of the coal loaded into cars upon them from the chutes overhead, the north track being known as the slack track, the middle track as the nut or egg track, and the south track as the lump coal track. The empty cars are set in at the eastern

end of the switch tracks, which have a slight downward grade to the west, so that cars set in motion at the east end of the switch are run westward by force of gravity. All three tracks converge into one track, forming a storage track, which connects with the main track at a point several hundred feet west of the mine.   The loading of the cars is done by a force of six men, known as the car trimming gang, four of whom work in the box car upon which the lump coal is loaded, and the other two  have charge of the slack and nut cars, taking out loaded cars and bringing in empties.

On  December  7, 1898, appellee was in  the  employ of appellant as a member of  the car trimming gang.   The men worked in pairs, and, just before the accident, appellee and Morris Cutler, who was his partner at the time, had been in the box car helping to trim the load.   It was their turn to go out of the car to the other work.   Appellee got upon the top of  the loaded car and took it down the track beyond  the  switches leading to the slack and  nut  coal tracks, to the  storage track.,  He then  sealed  the car and started  back to the  coal chute.   Soon  afterward  a  car loaded with slack coal was started down the slack coal track by Cutler.   Shortly after the car started William Bensch called  out  from  the  platform above the tracks that the switch was set wrong, and  appellee immediately  ran west, ahead of the car, to set  the  switch right before the car should reach it.   While so engaged he, in some manner, caught his foot in the  frog  of the switch track and was unable to extricate it.   The car at that time was some thirty feet away.   He gave an alarm, but there was no one on the car to set the  brake.   The car, being unchecked, ran over his legs and so injured them that they both had to be amputated.   For the injury so sustained, appellee brought suit against appellant and the Chicago, Rock Island and Pacific Railway Company.

The case was tried upon the fourth and sixth counts of the declaration.   The fourth count charged that defendant permitted  the  frog  to  remain  unsafe  and  not  properly

blocked, and carelessly started a car away from the chutes on the sidetrack, without having first placed a competent man upon said car at the brake to control the same. The sixth count charged that defendants suffered one of the frogs of the sidetrack to remain unsafe and not properly blocked, and that the coal company carelessly and negligently had in its employ a servant who was not experienced in the work of handling said cars on said sidetrack, to whom the defendants carelessly failed to give any instructions as to his duties, and carelessly permitted and procured said servant to start a certain car away from the chutes upon the sidetrack, without stationing himself or any other person at the brake of the car, to control the motion thereof.

In the course of the trial and before the evidence was concluded, plaintiff dismissed the suit as to the Chicago, Rock Island & Pacific Railway Company. There was a verdict and judgment against appellant for $12,000.

The principal reason urged by appellant to reverse the judgment is that the verdict is not warranted by the proofs. The charge that the frog was not properly blocked was not sustained by the evidence, as the great weight of the proof showed that it was properly blocked. The car which caused the injury was started by Cutler with a pinchbar, under the direction of John Murray, the top boss, who told him to bar out the car. After he had started the car with the pinch-bar, he turned and went east to bring down an empty car to a position where it could be loaded, which was the place just occupied by the car he had started.

The charge in the declaration was that Cutler was inexperienced and that he had not been given instructions as to his duties. It is true that Cutler had only been working for appellant some five days and at this particular work only three days and that he had never taken a loaded car down the track. Much evidence was taken upon the question whether appellee objected to Cutler working with him when Cutler was in the employ of the company on a previous occasion. The only objection, however, that appellee

claims to have made, was that Cutler was lazy; but the boss, Murray, to whom appellee claims to have made the complaint, and McDonough, who is said by appellee to have gone with him at the time the complaint was made, both deny that any complaint at all was made. We do not think the objection that Cutler was lazy was material as tending to show incompetency, and if it were, the weight of the proof is that no objection whatever was made. Nor did the proofs in this case show that Cutler was an incompetent man for the business in which he was engaged. He started the car at the direction of his boss, and then went to attend to the next business in hand, which was to bring up another car. Whether or not there was negligence in starting the car and permitting it to go down the track in the manner it did, depended upon circumstances. Appellee claims that he was coming back from the place where he had gone with a loaded car and before he had reached the chute, and when he was forty feet distant from the loaded slack car, he saw Cutler still barring the car out; that the car was in motion and Bensch called out to him that the switch was set wrong; that he immediately turned and ran to set the switch and while so doing caught his foot in the frog. On the other hand Cutler testified that appellee had returned to the east end of the car which he was barring out, and that before he, Cutler, left it, appellee got upon the rear platform at the east end of the car, where the brake was; that seeing appellee in charge of the car, he turned and went back for an empty car. Bensch testified that he saw appellee back at the east end of the car with his hand against it, but did not see him get on the car; that when he turned and called to appellee that the switch was set wrong, appellee was behind the slack car, which was moving slowly; that appellee then started to run ahead of the car on the south side of it, and that he did not see appellee again until the car had passed over him. These were the only three witnesses to the circumstances immediately preceding the injury.

If appellee's story is the true one, and he did not

approach the car nearer than the distance mentioned by him and did not know that there was no one upon it, but turned and went to set the switch while Cutler was still barring the car out, a jury might well find that the top boss was negligent in sending the car down the track without any one upon it to set the brake, for it is clear from the evidence that after appellee's foot was caught in the frog and the alarm given, the car could have been stopped before it reached appellee if there had been any one at the brake. If, on the other hand, appellee was on the east end of the car when Cutler left it and afterward got off and ran ahead to turn the switch without setting the brake, or if he was at the rear end of the car and knew that Cutler had left it and that no one was on the car, and ran down to turn the switch while the car was coming unattended by any one, he in neither of these two cases ought to recover, as he took the risk with full knowledge of the facts. Appellee alone swears to his story as to where he was at the time he started to set the switch, while the two witnesses above mentioned, who appear to be entirely disinterested, swear that he was at the east end of the car when he started to go forward. These two witnesses are also corroborated by the fact that the sealing iron, with which appellee had just sealed the box car, was found at the west end of the nut coal car loading on the nut track under the chute at that time, which is inconsistent with appellee's claim that he only got within forty feet of the chute when he turned and ran to set the switch.

The preponderance of the proof appears to be that appellee was at the rear end of the slack car, that he knew Cutler had left it, and that the car was moving alone when appellee started to go to the switch.

Appellant complains that the thirty-third instruction offered by it was refused by the court. That instruction told the jury that if they found from the evidence Cutler was incompetent; that plaintiff knew of such incompetency and notified the top boss, Murray, of that fact; that Murray did not remove Cutler from said work, but permitted him

to continue in the line of his employment after such notice; that plaintiff continued to work with him, and afterward received the injury complained of by reason of the incompetency of said Cutler, then the plaintiff could not recover in this action.   This instruction attempted to summarize the facts, but improperly omitted the essential one claimed by appellee, to the effect that Murray, when complaint was made of Cutler, ordered appellee to go to his work, assuring him that it was all right.   It also made the entire case turn on the question of the competency or incompetency of Cutler, whereas the fourth count of the declaration charged appellant with negligence in ordering the car sent down without any one to control it, and under that count the question of competency or incompetency did not arise.   The instruction was therefore properly refused.

For the reasons above given, however, we are of opinion that the case should be submitted to another jury upon the facts.   The judgment is accordingly reversed and.the cause remanded.